**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 11-00540-PHX-JAT |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Camaron Lewis, | ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court is Defendant's motion to suppress. Following an evidentiary hearing on June 29, 2011, the Court rules as follows.

**I.  Background**

On March 16, 2011, at approximately 3:58 p.m., Defendant and his passenger, Carol Brown, were stopped at the United States Border Patrol Chekpoint on Federal Route 15 on the Tohono O'Odham Indian reservation in Pinal County. At the checkpoint, Border Patrol Agent Policastro identified himself to Defendant and proceeded to ask a few questions regarding Defendant's vehicle and citizenship. Agent Policastro walked around the vehicle and observed indications of recent body work, including the smell of epoxy. Agent Policastro asked Defendant if any body work had been performed on the vehicle recently and Defendant stated that there had not been any recent body work. Agent Policastro asked Defendant for permission to open the truck bed and Defendant gave permission to open the truck bed. Agent Policastro noticed that the truck bed was several inches thicker in depth

1 than most truck beds. Agent Policastro directed Defendant to move his vehicle to the secondary inspection area.

At the secondary inspection area, Agent Policastro asked Defendant for consent to search the exterior and interior of the truck and Defendant gave consent. Defendant was directed to a designated location where he was able to observe the search. Agent Policastro looked closely at the exterior of the truck and noticed several additional indications that body work had recently been performed on the truck. Agent Policastro asked Defendant again whether the body of the vehicle had recently been worked on. Defendant again denied that any recent work had been done. Then, Agent Policastro ordered a canine to the scene. At approximately 4:22 p.m., Agent Policastro read Brown her *Miranda* rights. At approximately 4:36 p.m., while waiting for the canine to arrive, Agent Policastro read Defendant his *Miranda* rights.

At approximately 5:05 p.m., a Tohono O'Odham officer arrived with his drug dog, Jordy. Jordy conducted a search of the vehicle and alerted to the odor of narcotics coming from the truck. Agent Policastro pried back some of the metal between the cab and the bed of the truck exposing a package wrapped in duct tape. Agent Policastro smelled strong odors of marijuana and laundry detergent. Agent Policastro then placed Defendant under arrest and seized the vehicle. Upon further searching at the Casa Grande Border Patrol station, which included the use of power-tools to cut into the truck bed, forty-two bundles of marijuana were found hidden in the truck.

**II.    Motion to Suppress**

    **A.    Reasonable Suspicion and Referral to Secondary Detention Area**

The rule that a search or seizure is unreasonable under the Fourth Amendment absent individualized suspicion of wrongdoing has limited exceptions. *City of Indianapolis v. Edmond*, 531 U.S. 32, 41 (2000). The Supreme Court has upheld brief, suspicionless seizures at a fixed checkpoints designed to intercept illegal aliens. *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976). Border Patrol maintains these checkpoints on important roads leading away from the border. At these checkpoints, a vehicle may be

stopped and its occupants may be questioned briefly, even if there is no reason to believe the particular vehicle contains illegal aliens. *United States v. Villamonte-Marquez*, 462 U.S. 579, 587 (1983) (citing *Martinez-Fuerte*, 428 U.S. at 545). A stop at a permanent immigration checkpoint constitutes a "seizure" within the meaning of the Fourth Amendment. *United States v. Preciado-Robles*, 964 F.2d 882, 884 (9th Cir. 1992). Such a stop is constitutional so long as the scope of the detention is limited to a few brief questions about immigration, the production of immigration documents, and a "visual inspection of the vehicle ... limited to what can be seen without a search." *Id.* At these checkpoints, the government may refer any vehicle to a secondary area for further immigration questioning "in the absence of any individualized suspicion...." *Id.*

The United States Supreme Court has refused to "credit the general interest in crime control as justification for a regime of suspicionless stops." *City of Indianapolis*, 531 U.S. at 41, 47. The Supreme Court has expressly stated, however, that despite never approving a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing, the constitutional status of permanent immigration checkpoints, like those approved in *Martinez-Fuerte*, remains intact. *Id.* Furthermore, the limitation on general crime-control checkpoints does not impair police officers' "ability to act appropriately upon information that they properly learn during a checkpoint stop justified by a lawful primary purpose." *Id.* at 48.

Although the law is not completely developed on this point, it appears that if a referral to a second inspection area is solely for drug-related concerns, the government must show "an articulable suspicion or 'a minimal showing of suspicion'… of criminal activity." *United States v. Taylor*, 934 F.2d 218, 221 (9th Cir. 1991) (quoting *United States v. Couch*, 688 F.2d 599, 604 (9th Cir. 1982)). An articulable suspicion is not equivalent to the reasonable suspicion standard. *See Taylor*, 934 F.2d at 221. It is a considerably lower standard. Whereas nervousness may create an articulable suspicion and be sufficient to justify referral to a secondary inspection area, nervousness alone would be insufficient to create reasonable suspicion. *Id.*

The initial detention of Defendant at the Border Patrol checkpoint was a constitutional seizure of precisely the type upheld in *Martinez-Fuerte*. The subsequent referral of Defendant to the secondary inspection area was also constitutionally permissible. It is unclear from the record whether Agent Policastro directed Defendant to the secondary inspection area "for further immigration questioning" or in an effort to further investigate the suspicious bodywork on the truck in search of narcotics. Whether for further immigration questioning, which would not require any individualized suspicion, or for purely drug-related concerns, which would possibly require articulable suspicion, the detention of Defendant was lawful – Agent Policastro had more than ample suspicion to refer Defendant to the secondary inspection area. Considering that the truck smelled of fresh epoxy, that the bed liner of the truck was fastened by only one screw, that the truck bed was several inches thicker than most truck beds, that there was visual evidence of recent body work, and that Defendant denied having any body work performed on the truck recently, Agent Policastro, trained and familiar with the methods commonly used to smuggle illegal drugs, clearly had an articulable suspicion that Defendant was hiding drugs in the truck. In light of this articulable suspicion, Defendant's claim that there was no justification for the referral to the secondary inspection area fails.

### B. Consent to Search

Defendant also argues that because he was not *Mirandized* before he consented to a search of his vehicle, his consent is invalid and the drugs found must be suppressed. At permanent checkpoints removed from the border, border patrol officers may not search a private vehicle without consent or probable cause. *United States v. Ortiz*, 422 U.S. 891, 896-97 (1975). Consent to a search must be knowingly and voluntarily given, and must not be the product of coercion. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The Ninth Circuit has established five factors to consider in determining whether a consent to search is voluntarily given:

(1) Whether Defendant was in custody;

(2) Whether the arresting officer had drawn his gun;

(3) Whether *Miranda* warnings had been given;

(4) Whether the Defendant was told that he had a right not to consent; and

(5) Whether the Defendant was told that a search warrant could be obtained if he refused.

*U.S. v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988).

No one factor is dispositive and the fact that some of the factors are not established "does not automatically mean that consent was not voluntary." *United States v. Torres-Sanchez*, 83 F.3d 1123, 1130; *Castillo*, 866 F.2d at 1082. In particular, the lack of *Miranda* warnings is not dispositive of whether a consent to search was voluntary. *Torres-Sanchez*, 83 F.3d at 1130.

Defendant's argument that his consent must be suppressed for lack of *Miranda* warnings fails. Though the Court should consider, as one of several factors, whether Defendant was *Mirandized* when determining whether his consent was voluntary, the fact that Defendant consented to the search prior to being *Mirandized* does not automatically invalidate the consent or require suppression of the drugs found during the ensuing search. Instead, the Court will consider the five *Castillo* factors mentioned above to determine whether Defendant's consent to the search of his vehicle was voluntary.

**(1) Whether Defendant was in custody?**

Whether a person is in custody or otherwise deprived of his freedom of action in any significant way is answered by reviewing the totality of facts involved at the time of the alleged restraint. *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981). Pertinent areas of inquiry include: [1] the language used by the officer to summon the individual, [2] the extent to which he or she is confronted with evidence of guilt, [3] the physical surroundings of the interrogation, [4] the duration of the detention, and [5] the degree of pressure applied to detain the individual. *Id*. Based upon a review of all the pertinent facts, the Court must determine whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave. *Id*.; *see also United States v. Bassignani*, 575 F.3d 879, 883-84 (9th Cir. 2009) (noting that these five factors are

not exhaustive).

Here, Agent Policastro told Defendant to move his vehicle to the secondary inspection area. The facts do not to suggest that Agent Policastro spoke in a threatening manner. At both the first and second inspection areas, Defendant was confronted with indirect evidence of his guilt. The exchange in question occurred outdoors, on the side of the highway. Agent Policastro testified that Defendant consented to a search of his vehicle at the initial stop, that he consented again after a few minutes of detention, and once more at the secondary inspection area no more than 24 minutes after being stopped.[1] No physical pressure or threats were made in order to detain Defendant. In light of the factual circumstances surrounding the detention, Defendant was not in custody at the time of consent.

**(2) Whether the Border Patrol Agent had drawn his gun?**

Neither Agent Policastro nor any other agent had drawn his gun.

**(3) Whether *Miranda* warnings had been given?**

*Miranda* warnings had not been given at the time of Defendant's initial consents.

**(4) Whether the Defendant was told that he had a right not to consent?**

Defendant was not told that he had a right not to consent.

**(5) Whether the Defendant was told that a search warrant could be obtained if he refused?**

Defendant was not told that a search warrant could be obtained if he refused the search.

Applying the *Castillo* test, this Court finds that three of the five factors support a finding that Defendant's consent was voluntary. Though Agent Policastro did not initially

---

[1] Defendant was stopped initially at approximately 3:58 p.m. Agent Policastro reported that he read Brown her Miranda rights at approximately 4:22 p.m., *after* he had referred Defendant to the second location, requested and received consent to search the vehicle, directed Defendant and Brown to a designated area in clear view of the truck, inspected the truck, and ordered a canine to the scene. This indicates that Defendant's second consent to search his vehicle likely occurred only ten or fifteen minutes into his detention.

- 6 -

*Mirandize* Defendant or inform him of his right to withhold consent, weighing the other three factors favors a finding that Defendant's consent to search was voluntary. *See United States v. Murillo*, 255 F.3d 1169, 1175 (9th Cir. 2001) (the district court may weigh "the relevant voluntariness factors in light of" the facts of the case) (overruled in part on other grounds by *United States v. Mendez*, 476 F.3d 1077 (9th Cir. 2007)). Thus, because Defendant was not in custody, no officer had drawn a weapon, and Defendant was not influenced by a possible search warrant, the Court finds that Defendant's consent was voluntary.

### C. Unreasonableness of Search

Finally, Defendant argues that the warrantless search of his car was so obtrusive as to be unreasonable. Defendant argues in the alternative that, if the Court determines that the search was a "border search" and did not require a warrant, the prying up the bed of the truck was too obtrusive or destructive to stay within the scope of a border search. Because the search of Defendant's car was based on consent, and would also have been justified by probable cause, both of Defendant's arguments fail.

The search of Defendant's car was based on consent, not border authority. Consensual searches are allowed because it is reasonable for law enforcement agents to conduct a search after receiving consent. *Florida v. Jimeno* 500 U.S. 248, 250-51 (1991). A suspect is free, however, after initially giving consent, to restrict or withdraw his or her consent at anytime. *See id.* at 252 ("A suspect may of course delimit as he chooses the scope of the search to which he consents."). It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given. *See id.* The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Id.* at 251.

Here, Agent Policastro's request to search the vehicle was made in the context of Agent Policastro's questions regarding the epoxy and recent body work on the truck. A reasonable person would likely have understood that Agent Policastro sought consent to further investigate the area of the vehicle that was suspicious. It would not be reasonable to

1 assume that, after several questions about the condition of the truck bed, Agent Policastro
2 intended to search other parts of the vehicle while ignoring the very part of the truck that
3 gave him concern. Given Agent Policastro's questions, a reasonable person would have
4 known that consent to search included consent to a focused search of the truck bed and areas
5 of recent body work. Additionally, much of the search occurred in plain view of Defendant
6 and there is no indication in the record that Defendant expressed a desire to limit or withdraw
7 his consent at the time of the search. The search did not exceed the scope of the consent, nor
8 was the consent revoked.

9 Finally, irrespective of consent, when law enforcement officers "have probable cause
10 to believe that an automobile contains evidence of a crime ..." they may search the vehicle
11 without obtaining a warrant. *United States v. Alvarez*, 899 F.2d 833, 839 (9th Cir.1990).
12 Under the automobile exception, the scope of a warrantless search based on probable cause
13 is no narrower-and no broader-than the scope of a search authorized by a warrant supported
14 by probable cause. *U.S. v. Ross*, 456 U.S. 798, 823 (1982). The practical considerations that
15 justify a warrantless search of an automobile continue to apply until the entire search of the
16 automobile and its contents has been completed. *Id.* at 821, n. 28. If an immediate search on
17 the street is permissible without a warrant, a search soon thereafter at the police station is also
18 permissible. *Id*. at 807, n. 9.

19 Here, the more invasive methods of the search did not occur until after Jordy the drug
20 dog had alerted to the odor of narcotics coming from the truck. Jordy's alert, along with the
21 visible signs of recent body work and Defendant's denial of recent bodywork, all in a well
22 known corridor for both human and drug smuggling, created probable cause for the search.
23 *See United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003) ("alert" by the
24 certified, reliable narcotics detector dog was sufficient, even by itself, to support a finding
25 of probable cause); *see also United States v. Lingenfelter*, 997 F.2d 632, 639 (9th Cir. 1993)
26 (holding that a "canine sniff alone can supply the probable cause necessary for issuing a
27 search warrant"). Once probable cause was established, Agent Policastro acted lawfully in
28 searching Defendant's vehicle, both at the secondary inspection area and at the Border Patrol

1  Station. Thus, whether by voluntary consent or by probable cause under the automobile
2  exception, the searches of Defendant's vehicle at the secondary inspection area and the
3  Border Patrol Station were constitutionally permissible.

**III. Conclusion**

Based on the foregoing,

IT IS ORDERED that the motion to suppress (Doc. 27) is denied.

DATED this 12th day of July, 2011.

_____
James A. Teilborg
United States District Judge